All right, gentlemen, you have 15 minutes aside. You can save your time for rebuttal. This was a bit of an unusual medical malpractice case for a number of reasons. It was not the sort of case where the expert witnesses quarreled about what was required based on whether or not a particular medical fact was put into an opinion process and so forth. This was, as the defendants conceded in their courts, in the trial court, a he-said-she-said case. Dr. Defendant agreed that if the plaintiff had told him she was having contractions, then the standard of care would have required him to take her right over to the hospital and to start the process of trying to prevent her premature birth. Dr. Defendant and all the treating doctors agreed that every moment would make a difference to the baby. In fact, Dr. Defendant, Olowopopo said, even a day of additional labor, additional pregnancy would increase the baby's chances of survival by 4% at that stage. Every day was critical. So the real case turned on a fact question, not an opinion question. The fact question was, did the plaintiff tell the doctor I'm having contractions? And so it's so critical in such a case that we have an opportunity to do what we can to put our side of the case on, on an even level playing field with the defense. Because essentially what happened was the defense cross-examined and impeached the plaintiff on a number of details about that conversation that she did not recall in her deposition. Counsel, let me ask you, you did not follow Supreme Court Rule 341 very efficiently in this case. We're having a real problem tracking your references and citations both in the argument and in the facts section. As a matter of fact, such as Dr. Mark's testimony, it's not in the record. Things aren't there that we need. So you just raised a point about what is in evidence, and some of it is not in the record. Or it's maybe in the record, but not clearly cited, too. I can represent to the court that it's in the record. If the citations are in error at this stage, I believe that the citations were correct. Obviously I put the citations in the brief. Well, there's only three citations to the record in one area. And that's on motions and limiting. So proceed. I just want to point out that you've kind of, it's like you've got one arm tied behind you. I understand. And at the risk of, I mean, I need to go forward. Unfortunately, I can't respond to whether or not a cite is correct. But I can tell the court that the primary issue in this case is whether or not the statement by defendant Dr. Olowopopo saying I have insufficient information to admit or deny the plaintiff's claim that she told me she was having contractions. Whether or not that is an admission, whether or not that is something that should have bound the defendant at the time of trial, or in the alternative, whether or not it should have been admissible as a prior statement. The appellee seems to think there was waiver here, that the pleading was not offered as an admission against interest or simply used to cross-examine the opponent? Actually, I offered it on volume four, page 55 through 57 was where the conversation took place. This is what I quoted the trial court at length on that particular issue. It's found in volume four, starting on page 56. I said, I mean, this is quoting myself, I mean, he said as a matter of pleading that he doesn't have information, sufficient information, I don't even think he should be allowed to take the witness stand and say no. But the bottom line is it's certainly admission by a party opponent. Until such time as he amended the answer, it's a judicial admission that can't be controverted. The court said the use of the answers to the amended complaint is going to be denied. Don't use them. They are not going to be shown. I then marked the answer and the complaint as exhibits. I offered them as plaintiff's exhibits, group L, into evidence, and the court said they're part of the record, but they are not going to be admitted. That's at volume four, page 56 and page 57. He said he had an inability to recall, correct? No, no, what he said was, he said, I have insufficient information to admit or deny the plaintiff's claim. Okay, but then at trial, what did you ask? What he was asked in court was, just so I have it in front of me, I want to give you a quote. What he said in court was that she never told him. And let me just get it for you just so we're on the same page. He said she never told him. That was at volume five, page 221. The question was, what happened at the meeting? This is on cross-examination or direct examination after adverse. On volume five, page 221, did she ever tell you the answer? She never did. And he said that was based on his record and also what he remembers what happened. That's clearly in the record. There's no question about that. Okay, but is that materially inconsistent? It is materially inconsistent. Look at it this way. Traffic accident occurs. Defendant driver is asked by the police officer, was the light red when you entered the intersection? If he says, I don't know. Writes it down in a police report. At trial in that case, obviously his statement, I don't know whether or not the light was red when I pulled in the intersection, would be an admission made by an opponent. No, that's not what happened here. What happened here, you're taking a stock answer to a complaint that was drafted by a lawyer where he says the defendant having insufficient knowledge in which to form a belief as to the truth of the allegations neither admits nor denies same but demands strict proof thereof. That's something more than saying what the fellow says at the traffic accident than I don't know. It's certainly more legalistic, but the difference, let's talk about the substance. What does that mean? I have insufficient information to admit or deny. If the witness is on the witness stand and he said she never told me, how does he do that if he has insufficient information to admit or deny what she said? At that time. But he never, the point is, I should be able to bring it up. If he wants to attempt to rehabilitate the defendant by showing that something has happened since that time, to show that now he knows something that he did not know at the time, that's appropriate rehabilitation. Well, the Keller case that's cited by your opponent basically says that the inability to recall a fact prior to trial is not inconsistent with the later ability to recall that fact at the trial. I realize that Keller says that, Your Honor, and as I said in my brief, I believe that that decision was wrongfully decided. I believe I cited a much more recent case in my brief that showed a much more pertinent information about the substance. So we're to just ignore it then because you feel it's wrongfully decided? No, no, let's take a look at it. Let's take a look at Keller. Keller was a situation involving an insurance dispute. And in that insurance dispute, the policyholder was asked the question, did the agent ever tell you about a certain kind of coverage? At the deposition, the agent or the person said something along the lines of, I don't remember what he said he probably did. At trial, the same person took the witness stand and said, no, he never told me about that. Now, in that circumstance, the court said that the fact that he didn't, he said, I don't remember in his discovery deposition is not inconsistent with now his memory at trial. Here the difference, we're not talking about memory. This is not a situation where Dr. Olopopo at his discovery deposition said, I don't remember. What he said was, as a matter of pleading, and the pleadings don't just make an issue. The pleadings are supposed to be done after a reasonable inquiry. They're supposed to be grounded in fact, have a good faith basis. And when the plaintiff or defendant files that answer, that's simply supposed to be an official position based on factual research. So now we're talking about the difference between memory and knowledge. Dr. Olopopo at trial is not talking so much about memory anymore. He's talking about, I know she never told me because I would have written something down if she had. That's essentially what defense counsel is saying. But he knew that when he filed the answer. This is not something where it's changed. It's not a memory that's been refreshed like Keller. But the other thing about Keller is that the defense at trial over and over again impeached the plaintiff, Latonya Jackson, on things that she did not remember at her discovery deposition. If Keller was true, all of those impeachments would have been inappropriate. You characterize this as a judicial admission. What is the material fact that was admitted to by the pleading? He's admitting that he has insufficient information to deny the plaintiff's claim. He's admitting that he has no knowledge on that issue. At that point in time. That's right. And it never changed. That was his position at trial in the pleadings. I should have been allowed to point out to the jury that when he answered this complaint, he said I don't have sufficient knowledge to deny her claim. That's my right to impeach him. If there was rebuttal, if there was rehabilitation, then the defense counsel would be entitled to go back into that. But the bottom line was we never got to step one. Step one was the admission. I would ask you to move on to medical literature because I think we're more interested in that right now. Okay. The medical literature issue was one where both sides filed essentially identical motions in limine to keep out non-authoritative texts and to keep out substantive use of texts. Defense counsel then proceeded to argue the substantive effect of the ACOG bulletin over and over again. Defense counsel in closing argument continued to say what does the literature show? The literature impeaches the plaintiff's expert. The literature supports our position. So forth and so on. Now, the bottom line is that Dr. Hamburger, the plaintiff's expert, was never actually impeached with the document. The document was offered to him. He was asked a simple question, which is do you agree or disagree that tocolytics can delay labor for two to seven days to allow the patient to be transferred to another facility? He said I agree. It's an incomplete statement, but it's correct. But by doing that, he opened the door. Well, he opened the door to that particular thing, but he never said that's what the ACOG bulletin says. There was never any testimony about what the ACOG bulletin says. I may not agree, as I say. I mean, I'm not disagreeing with you, but the case law seems to say that once the expert opens the door as to something like that, it's a concession, and therefore it's free game by defense counsel. I agree that when he says it's a true statement, that defense counsel is able to use that true statement. But it doesn't make it able to use that as a statement from ACOG. And the other part about it is is that the statement does not impeach the doctor's position. The doctor's position was that use of tocolytics can delay labor for days or weeks or even to term. That was his statement. That was his opinion. When you say it doesn't impeach, in the manner that it's used here, doesn't it obviate the need to prove up the impeachment? In other words, if a witness agrees with the statement, there's no need to go through with the final tangent of impeachment to prove up the inconsistency if there was one. That's absolutely true, but the point behind it is that it's not a statement from ACOG anymore. You see, when he stands in front of the jury and says, I had to fight like crazy. Every time the ACOG bulletin was mentioned, I was objected. You had indicated there's no disclosure on that, but there was a 237 disclosure. There was a 237 disclosure. And again, I'm not saying I agree with this because I went both ways as a trial judge on these types of cases. So I emphasize that I don't honestly believe the law is as clear as it should be there. Well, it's absolutely true. There was a 237. He did hand it to me. And I said, there's no one who's going to lay a foundation for this. All of your experts said that none of these things were authoritative. And also the bottom line behind it is that in standing in front of the jury, defense counsel said, ACOG says so-and-so. ACOG disagrees with the plaintiff's expert. My point is that when he sat on the stand, I agree with that statement. What ACOG said or didn't say is not in evidence. It's a concession by the expert. Essentially, you don't need to put impeachment in because he's agreed with the statement. But now ACOG isn't saying anything. And when defense counsel, the crux of his closing argument was, ACOG disagrees with the plaintiff's expert. ACOG shows us. ACOG supports. The literature says. All of those things were motions to eliminate orders granted by both lawyers. But your argument then seems to be, with what was said in closing argument, not being based on the evidence rather than the use or non-use of the ACOG bulletin. There are occasions when a bulletin could be substantively admitted into evidence. They're rare. But that wasn't the effort here. That wasn't the case here. So what I'm arguing, yes, you're right, what I'm objecting to then and what I objected to in my brief was that they're standing up and arguing something that's not in evidence. They're saying, and it says over and over in my objections, arguing facts not in evidence, arguing from documents not in evidence. Those objections were made continuously. But that was not the way the issue was framed in your brief, as I recall. It dealt with the use of the particular document. You say the defendant asked the court to prevent anyone from arguing contents of medical literature. Both requests were granted. Shouldn't the defendant have been stopped from using medical literature in violation of both orders? That implies that there was some evidentiary ruling that was made that you're contesting here, not what was said in the summation by the parties. I objected both when the document was discussed during both examination on cross of my client, of my witness, but also on my cross-examination of the defendant's expert, the OB doctor. And the point is that in the testimony of the OB doctor, the OB doctor was asked questions about tocolytics delaying delivery for two to seven days. She said something, yes, and that's supported by the literature, which I objected to. It was overruled, I said. And they mentioned ACOG again. The defendant's OB expert mentioned ACOG as being supporting this. I objected it was overruled. All those things did come in in the evidence phase. But then in the closing argument, where the nail was basically driven into the coffin, was this constant argument that the plaintiff's expert has been impeached by his own group, ACOG, and that when defense counsel stands up and says that ACOG says X, that is outside the evidence. There is no evidence to support that. But every juror thought it was because he stood there in front of the jury looking at a document that had been identified as an ACOG bulletin and said, doctor, don't you agree so-and-so? And he said, yes, I agree. It's a true statement, but incomplete. So the bottom line was I was going not just against the defendant's expert. I was going against ACOG. I never could cross-examine ACOG. The content of the ACOG bulletin was never in evidence. So how am I supposed to say to the jury, you know, it didn't really say that in ACOG. Here's what ACOG really says. How could I do that? It wasn't in. How could I point that out? What did you say about it? I tried to stay as far away from it as I possibly could, you know, because the bottom line was I objected as much as I could. The jury clearly saw that I was against the ACOG bulletin. I mean, there's no doubt in any juror's mind that the ACOG bulletin must have hurt my case, as much objecting as I did. And when I did my opening and closing, I didn't mention it at all. Defense counsel mentioned it over and over and over again, to which I objected. And I tried on rebuttal to say that he wasn't impeached, but the bottom line was the damage had already been done. The jury had been told that ACOG is against my plaintiff's position, that in order to find for the plaintiff, you would have to find against ACOG. And there was just no way for me to counteract that. There was no way for me to overcome it. And I think that that's – it just – it was a fatal position to be taken. I know I'm past my time. I wanted to hold something for rebuttal. If the court doesn't have any other questions, I can deal with it this time. Thank you. Thank you. Justices, counsel. I'm going to hit you right away. Fair enough, Your Honor. If a motion in limine on both sides to not allow certain documents in, how can you raise the ACOG bullet? Well, Your Honor, first of all, I think the motion in limine – Your own. I understand it was our motion in limine, but it was a cross-examination of plaintiff's expertise and wide discretion in order to do that. And if you look at the actual record, you look at closing argument by defense counsel, if you look at the cross-examination of Dr. Hamburger, the literature was not allowed to be used as substantive evidence. Every time Mr. Burger – That's why it wasn't admitted? I'm sorry, Your Honor? He never offered it for – Correct. It was – what was argued in closing argument was where Dr. Hamburger conceded to what was contained within the literature. Counsel says Mr. Burger stood in front of the jury with an article in his hand. Where is that in the record? I have no way to respond to that. As with many parts of this appeal, I'm boxing its shadows here. But isn't he more boxing its shadows because he can't attack the document? Well, I don't think he has to attack the document. The issue – the question put to his expert was, do you agree with this statement? And he said, yes, I agree with this statement. And in closing argument, defense counsel said, my expert or the plaintiff's expert agreed with this statement. And every time he started to say, and Acock says, counsel objected, and the court sustained the objection. And I had to dig through Plaintiff's statement of facts to even find where he was referencing that because I wasn't sure exactly which portions of the closing argument he was taking issue with. But if you actually look at the text of the closing argument and where there were objections made to the substantive use of the document, any time it was anything close to the line of saying, this is what the bulletin says, those objections were sustained. Where Mr. Burkard then said, their expert agreed with this statement, which is inconsistent with his other testimony. Those objections were properly overruled. So I don't think the court did anything wrong in that regard. And I think Your Honor pointed out several issues here that are relevant. None of counsel's issues presented for review were phrased properly, nor was there much in the way of citation of the record for me to be able to address exactly what we were looking at. For instance, the issue of the presentation of the pleading. It was only presented in one way, and that was it was offered as an exhibit that was going to be used. And even the circumstances of exactly how that was done are unclear. There was never an offer of proof by plaintiff's counsel that had I been allowed to present this exhibit or cross-examine Dr. Olavopopo with this exhibit, these are the questions I would have asked and these are the answers I would have anticipated being given by Dr. Olavopopo. And this is how it would have helped my case, whereas we already know Dr. Olavopopo agreed. He has no independent memory of that conversation with the plaintiff. He admitted that on the stand. And he never said, as counsel claims in his brief, I remember specifically she told me no contractions. In fact, the question that was asked was, Dr., by review of this record, did Latanya Jackson make any complaints to you of preterm labor on January 26, 2003? Answer, no, she never did. There was never a question specifically put to Dr. Olavopopo that matched the allegations in plaintiff's complaint wherein Dr. Olavopopo gave an answer that was materially inconsistent with what he said or how he responded to the complaint. His counsel, it was an unsigned pleading, if counsel really believed that he had a fact that was nailed down, he could have sent a request to admit facts, he could have nailed this down in any number of different ways. But Dr. Olavopopo never came out and said, absolutely, I recall that she never said that. I remember our conversation and she didn't tell me about contractions. Never said that. So if you look at the very specific text of the allegation in the complaint, it says that during the course of the visit, the plaintiff, Latanya Jackson, told the defendant, Dr. Olavopopo, that she was having contractions every one to two hours and had been having less frequent contractions since her last prenatal visit. That is a very specific allegation. And nowhere was that type of an allegation addressed during the course of the trial. So we have that with respect to the pleading. And frankly, I don't think counsel has demonstrated as would be required here for him to prove his case that there was any harm. What would Dr. Olavopopo have said had he been presented with his answer to the complaint? You know, my counsel drafted that. I've already told you, I don't have any independent memory. But if you look at my records, there's nothing documenting a complaint of preterm labor. There's nothing that's inconsistent or that would have lit up in the jury's mind, wow, he just lied about what had happened. There's nothing here, there's no harm. And we don't even know how that would have come out because no offer of proof was made. And counsel was extensively permitted to cross-examine Dr. Olavopopo regarding the issues of what he remembered and did not remember. He made the point very clear to the jury that Dr. Olavopopo did not have an independent recollection of this conversation. He came back to it over and over and over again. So it's not like the jury was kept from hearing that he had some lack of recollection about this issue. I think the court properly points out the Keller case. Counsel apparently just thinks the court should disregard Keller because he doesn't like it. But the Keller case says what it says. Might plaintiff's counsel have objected to defense counsel's cross-examination of the plaintiff on similar issues? Perhaps. That issue's not before this court. Those objections weren't made and that issue is waived. Two wrongs don't make a right argument doesn't seem to carry much water. Again, with respect to the use of the medical literature, it was used in cross-examination. The way the issue is presented in the briefer, again, it was unclear exactly what plaintiff's counsel was arguing was the improper use. The expert actually conceded that he reviews ACOG bulletins, he's a member of the organization that produces the bulletins, and he finds them to be a, quote, valuable resource, close quotes. And he agreed with some of the text of the specific bulletin that was cited. Now, I cited the People v. Johnson, which is a case wherein the expert, all the expert said was, yeah, that's a text I've reviewed from time to time. It's a resource. Didn't even call it a valuable resource. And the court in that case said, that's good enough. You can cross-examine him with this big textbook. And there was nothing to suggest that the plaintiff's expert or the expert in that case had been involved in authoring the textbook or belonged to the organization that authored the textbook. I think the case here is even clearer. But I would urge the court to look specifically at what questions were asked of Dr. Hamburger, what objections were sustained when those questions were being asked, and then in the closing argument, the exact text of what was said. I could cite to it, it's cited extensively here. We're running long on time, so I don't want to waste the court's time in that regard. Finally, I would address, I don't know that we ever really got to the issue of the testimony of Dr. Marks, the defendant's expert. Again, I'm not really clear what issue is being raised by plaintiff here. The issue presented for review as stated is, defendant's pediatric expert does not treat preterm labor and has never prescribed tocolytics should the trial judge have allowed the pediatrician to give opinion testimony about the effectiveness of a drug he had never prescribed used to treat a condition he had never treated. That's the way the issue is presented, but there were no foundation objections during Dr. Marks' testimony. The objection in Lemonade was specifically to Dr. Marks relying upon or using a piece of medical literature. The court sustained that objection, told him not to use it. Now, in counsel's mind, Dr. Marks was relying on that literature by the way he testified, but Dr. Marks gave very specific testimony regarding his base of knowledge, how he works with obstetricians on virtually a day-to-day basis and is involved in the process, the decision-making process as to when to give laboring mothers tocolytics. So I'm not sure what we're arguing about here. There was never an objection that counsel made that was overruled where he took on the foundation and there was some lack of foundation demonstrated. So I think if the court looks at all three of the issues presented for review by plaintiff, not only has plaintiff failed to provide a basis in the record to say the court made this decision, this was the issue, it was presented this way, the court ruled this way, this ruling was improper, and that ruling constituted error and caused irreversible harm to the plaintiff. None of those issues are presented in that fashion, and that is the plaintiff's burden. So on that basis, I believe the plaintiff's appeal should be denied and that the considered decision of the jurors should be upheld. Thank you. Thank you. May I have one moment? Yes, step up, counsel. I wanted to address the issue of what was and was not preserved concerning the use of the guideline, and I wanted to direct the court's attention. The guideline. Be more specific. This is in relation to the use of the ACOG bulletin during the closing argument. Counsel had said that the objections were sustained as to the substantive use. I wanted to direct the court to Volume 5, pages 12 through 14. Specifically, I want to read this part, starting on page 14. Defense counsel, what did we hear Dr. Hamburger say regarding that practice guideline? That the practice guideline, plaintiff's counsel objection to reading of the guideline, the court overruled. That the guideline suggests that you can delay labor by tocolytics for two to seven days for the purpose of administering steroids or for transferring the patient. When I showed him that document, even he had to admit that it was the guideline. How could he not? It's his professional sense of society. It's right on target and it absolutely rebuts his assertion that if tocolytics were given, the pregnancy could have been delayed, in his own words, two weeks or months to term. That's one. There were others. Another is also on page 12, starts with Dr. Hamburger's own professional society, plaintiff's counsel objection, substantive use of a document, the court overruled. Defense counsel, the assertion is rebutted by Dr. Hamburger's professional society. He said, I'm a fellow of ACOG. It is rebutted by his own professional society's practice guideline. I believe that it's clear when looking at the record that those objections were made, those objections were overruled and that I did what I could do under the circumstances to preserve the question of attempted substantive use of the ACOG bulletin. I don't think the ACOG bulletin should have been used at all, but certainly arguing it as substantive evidence to the jury is well beyond just even mentioning it. You know, getting past was it disclosed, getting past whether or not it was used by any of the experts, the real bottom line here is that it was never substantive evidence. ACOG never said anything in this record. And to say in front of the jury that the plaintiff's position is completely rebutted by the ACOG bulletin when the ACOG bulletin is not in evidence, and I can't even address and tell the jury that these things are not in the ACOG bulletin because it's not there. I can't pull out page 3 or page 4 of the ACOG bulletin that talks about why you're supposed to use it or what its use is or anything. There's nothing I can do. It's not used with any of their experts, so I can't cross-examine their experts on any of the downsides of trying to rely on what the ACOG bulletin said. All those things, you know, the court talked about a hand tied behind me, and I acknowledge that that's my fault for the citations of the record, but both hands were tied behind me in court with the ability to cross-examine the ACOG bulletin. I couldn't do it. It was ACOG versus the plaintiff. Jury chose ACOG. And I believe I should have had a fair trial, and I don't think I got one. If there are no other questions, thank you very much.